IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:20-CV-5-KS

| | |
|---|---|
| OLIVER FLOYD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **ORDER** |
| ANDREW M. SAUL, Commissioner ) | |
| of Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, the parties having consented to proceed pursuant to 28 U.S.C. § 636(c). Oliver Floyd ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. The court has carefully reviewed the administrative record and the motions and memoranda submitted by the parties. For the reasons set forth below, the court grants Plaintiff's Motion for Judgment on the Pleadings [DE #19], denies Defendant's Motion for Judgment on the Pleadings [DE #25], and remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on June 16, 2014, with an alleged onset date of June 3, 2014. (R. 178–81.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 104, 124, 142–44.) A hearing was held on April 19, 2016, before Administrative Law Judge ("ALJ") Joseph R. Doyle, who issued an unfavorable ruling on August 23, 2016. (R. 25–47, 50–88.) On December 2, 2016, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff then filed a complaint in this court seeking review of the final administrative decision. *See Floyd v. Berryhill*, No. 5:17-CV-40-D, ECF No. 1 (E.D.N.C. Jan. 23, 2017). This court ultimately remanded the case to the Commissioner. *Floyd v. Berryhill*, No. 5:17-CV-40-D, 2018 WL 896899 (E.D.N.C. Jan. 29, 2018), *mem. and recommendation adopted by* 2018 WL 890071 (E.D.N.C. Feb. 14, 2018). The Appeals Council then vacated the prior decision of the Commissioner and remanded the case to an ALJ.[1] (R. 1734.)

On April 22, 2019, ALJ Rebecca Adams conducted another hearing, at which Plaintiff and counsel appeared. (R. 1662–89.) ALJ Adams issued an unfavorable opinion on June 6, 2019. (R. 1634–61.) Plaintiff filed written exceptions to the ALJ decision, but the Appeals Council declined to assume jurisdiction. (R. 1627–33.) At that time, ALJ Adams' decision became the final decision of the Commissioner. *See* 20 C.F.R. 404.984(b)(2). Plaintiff then filed for review of ALJ Adams' unfavorable decision pursuant to 42 U.S.C. § 405(g).

# DISCUSSION

I.  Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence"

---

[1] It appears that Plaintiff filed a new claim while Case No. 5:17-CV-40-D was pending. The Appeals Council directed the ALJ to consolidate the new claim with the instant matter upon remand, which ALJ Adams did. (R. 1664, 1734.) ALJ Adams' written opinion and the Commissioner's brief indicate the new claim was for DIB and Supplemental Security Income (SSI) benefits. (R. 1637; Def.'s Mem. Supp. Mot. J. Pldgs. [DE #26] at 1.) The court could not identify an application for SSI benefits in the record, though. Accordingly, all references to the applicable regulations herein are to the DIB regulations, which are not materially different from the SSI regulations aside from the income requirements. *See Sims v. Apfel*, 530 U.S. 103, 107 n.2 (2000).

inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's residual functional capacity] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and

4

denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015).

III. **ALJ's Findings**

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2019. (R. 1639.) At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since June 3, 2014, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff had the following severe impairments: "obesity; hypertension; bilateral degenerative joint disease of the subtalar joints with pes planus; osteoarthritis of the bilateral knees; mild to moderate chronic obstructive pulmonary disease; obstructive sleep apnea; migraines; bilateral shoulder degenerative joint disease; depressive disorder; post-traumatic stress disorder." (*Id.*) The ALJ found Plaintiff's lower back pain, gastroesophageal reflux disease, erectile dysfunction, and bilateral hand and wrist complaints to be non-severe impairments. (R. 1640.)

At step three, the ALJ concluded that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 1640.) The ALJ expressly considered Listings 1.02, 1.04, 3.02, 4.02, 4.04, 11.00, 1.04, 12.06, and 12.15, and considered Plaintiff's obesity in accord with SSR 19–2p. (R. 1641–43.)

5

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had

> the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except due to chronic musculoskeletal pain, [Plaintiff] can never climb ladders, ropes or scaffolds; can frequently climb ramps and stairs; stoop, kneel, crouch, balance; must avoid concentrated exposure to workplace hazards due to hypertension and obesity; due to previous diagnosis of chronic obstructive pulmonary disease, [Plaintiff] must avoid concentrated exposure to respiratory irritants, extreme cold, extreme heat, excess humidity; based on a history of migraine headaches, [Plaintiff must] avoid concentrated exposure to noise levels greater than low (e.g., "heavy traffic per the Dictionary of Occupational Titles/Selected Characteristics of Occupations); [Plaintiff] can understand, remember and carry out instructions for simple, routine, repetitive tasks not at a production pace; can maintain concentration, persistence and pace throughout the workday but not at production pace, i.e., where each task must be completed within a strict time deadline; can interact with supervisors frequently in a non-confrontational manner; can be around others in the workplace but can have only occasional casual contact with the public and coworkers; [and] can adapt to work place changes involving simple work-related decisions.

(R. 1643.) In making this assessment, the ALJ stated that she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), evaluated the opinion evidence in accord with 20 C.F.R. § 404.1527, and found Plaintiff's statement concerning the intensity, persistence, and limiting effects of Plaintiff's symptoms "not entirely consistent with the medical evidence and other evidence in the record." (R. 1643–44.) At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 1653.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff

6

could perform, namely: counter supply worker (DOT # 319.687-010), dining room attendant (DOT # 311.677-018), and dietary aide (DOT #19.677-014). (R. 1654.) The ALJ concluded that Plaintiff had not been disabled under the Act since June 3, 2014, Plaintiff's alleged onset date, through the date of the ALJ's decision. (*Id.*)

IV. **Plaintiff's Arguments**

Plaintiff contends the Commissioner erred by:

(A) failing to correctly evaluate all medical opinion evidence, particularly the opinions of treating and examining medical sources (Pl.'s Mem. Supp. Mot. J. Pldgs. [DE #20] at 14–20);

(B) failing to analyze whether an ambulatory assistive device was medically necessary (*id.* at 20–21); and

(C) finding that Plaintiff had the RFC to lift more than 15 pounds, not use an ambulatory assistive device (cane or walker), and stand and/or walk more than 3 hours in a workday and for more than 30 minutes at a time (*id.* at 22).

The latter arguments depend on Plaintiff's first assignment of error to the extent Plaintiff contends the ALJ should have given more weight to the opinions of treating and examining medical sources who imposed greater limitations than those determined by ALJ Adams. These arguments are therefore addressed in conjunction with Plaintiff's argument regarding the evaluation of medical opinion evidence in the record. The Commissioner contends ALJ Adams correctly evaluated the medical opinion evidence, properly considered Plaintiff's need for an ambulatory assistive device, and assessed an RFC supported by substantial evidence. (Def.'s Mem. Supp. Mot. J. Pldgs. at 6–19.) The undersigned disagrees with the Commissioner for the

7

reasons explained below and, therefore, remands the matter to the Commissioner for further proceedings.

### A. Medical Opinion Evidence

An ALJ "is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner." SSR 96–5p, 1996 WL 374183, at *3 (July 2, 1996).[2] As part of this consideration and explanation, an ALJ must evaluate all medical opinions in the record. 20 C.F.R § 404.1527(b)–(c)[3] (medical opinions will "always" be considered and opinions from examining medical sources will "generally" be given more weight); SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (RFC assessment "must . . . [c]ontain a thorough discussion and analysis of the objective medical evidence" and "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). Medical opinions are statements from physicians or other "acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s),

---

[2] This agency ruling was rescinded March 27, 2017, for claims filed on or after that date. 82 Fed. Reg. 15,263 (Mar. 27, 2017).

[3] Unless otherwise noted, all references are to the regulation in effect at the time Plaintiff filed his claim, which preceded the effective date of several updated regulations on March 27, 2017. *See Brown v. Comm'r of SSA*, 873 F.3d 251, 255 (4th Cir. 2017). Although not addressed by the parties' briefs, it appears that the consolidated claims, even if filed after March 27, 2017, would be subject to the prior regulations. *See* Social Security Administration, Program Operations Manual System (POMS) DI 24503.050.D.2, https://secure.ssa.gov/apps10/poms.nsf/lnx/0424503050 (last visited Mar. 8, 2021).

8

including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1502, 404.1513(a), 404.1527(a)(1). "Acceptable medical source" includes only licensed physicians, licensed or certified psychologists for purposes of establishing intellectual disability and intellectual functioning levels, licensed optometrists for purposes of establishing visual disorders, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1513(a).

"When evaluating conflicting medical opinion evidence, an ALJ generally must accord more weight to the medical opinion of an examining source than to that of a non-examining source." *Testamark v. Berryhill*, 736 F. App'x 395, 397 (4th Cir. 2018) (per curiam) (unpublished) (first citing 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); and then citing *Brown*, 873 F.3d at 268). In the context of opinions from examining and treating sources, ALJs must follow the treating physician rule, which the Fourth Circuit recently emphasized is "robust." *Arakas v. Comm'r of SSA*, 983 F.3d 83, 106–07 (4th Cir. 2020).

Under applicable regulations, the evaluation of opinions from treating medical sources has two steps. First, if the medical opinion of a treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is entitled to controlling weight. *Dowling v. Comm'r of SSA*, 986 F.3d 377, 384 (4th Cir. 2021) (first quoting 20 C.F.R. § 404.1527(c)(2); then citing *Arakas*, 983 F.3d at 106–07; and then citing *Brown*, 873 F.3d at 255–56). "Second, if a medical

9

opinion is not entitled to controlling weight under the treating physician rule, an ALJ must consider each of the [] factors" under 20 C.F.R. § 404.1527(c)(2)(i)–(6). *Dowling*, 986 F.3d at 384. Thus, if controlling weight is not assigned to a treating source's opinion, the ALJ must consider each factor in 20 C.F.R. § 404.1527(c)(2)(i)–(6) when deciding how much weight to give the opinion. *Dowling*, 986 F.3d at 384–85. "While an ALJ is not required to set forth a detailed factor-by-factor analysis in order to discount a medical opinion from a treating [medical source], it must nonetheless be apparent from the ALJ's decision that [s]he meaningfully considered *each* of the factors before deciding how much weight to give the opinion." *Id.* at 385 (first citing *Arakas*, 983 F.3d at 107 n.16; and then citing *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000)).

Here, ALJ Adams explicitly stated she assigned the following weight to the medical opinions below:

- Partial weight to Dr. Sharon J. Skoll, Ph.D., non-examining state agency consultant (R. 1651);

- Partial weight to Dr. Hari Kuncha, M.D., non-examining state agency consultant (*id.*);

- Partial weight to Dr. Clifford H. Charles, Ph.D., non-examining state agency consultant (*id.*);

- Partial weight to Dr. Joseph C. Moran, M.D., non-examining state agency consultant (*id.*);

- Partial weight to September 29, 2014, opinion of consultative examiner Dr. Micah Edwin, M.D., and little weight to March 15, 2015, opinion of Dr. Edwin (R. 1652);

10

Case 5:20-cv-00005-KS   Document 28   Filed 03/09/21   Page 10 of 16

- Unspecified weight to April 6, 2016, opinion of treating psychiatrist Dr. Edwin Hoeper, M.D., and little weight to November 7, 2018, opinion of Dr. Hoeper (*id.*);

- Little weight to Dr. William Gartlan, M.D., consultative examiner (*id.*); and

- Little weight to Dr. Philip A. Lewis, D.P.M., treating podiatrist (R. 1653).

ALJ Adams summarized the January 13, 2015, opinion of Dr. Sampath V. Charya, M.D., a neurologist who examined Plaintiff, but did not make an explicit assignment of weight to the opinion. (R. 1646.) Relatedly, ALJ Adams neither summarized nor discussed treatment notes and opinions from Dr. Charya's May 8, 2015, report (R. 2156) following up with Plaintiff after completion of a nerve conduction study. Of particular relevance here, Dr. Charya's May 8, 2015, report continued to recommend that Plaintiff's maximum weight-handling capacity be limited to no more than ten to fifteen pounds.[4] (R. 2156 (Dr. Charya's May 4, 2015, report); R. 1637–61 (ALJ opinion).)

In sum, ALJ Adams assigned no more than little weight to the two treating sources she identified and no more than "partial weight" to any of the medical opinions in the record.

---

[4] When summarizing Dr. Charya's January 2015 opinion, ALJ Adams cited to Exhibit 5F, which corresponds to pages 1226 through 1319 of the record. Dr. Charya's May 2015 opinion is on page 2156 of the record, which is located in Exhibit 23F.

11

Plaintiff argues that ALJ Adams erred with respect to the opinions of Drs. Charya, Lewis, Edwin, and Gartlan.[5] (Pl.'s Mem. Supp. Mot. J. Pldgs. at 14–20; Pl.'s Resp. [DE #27] at 1–3.) In contrast, the Commissioner argues (1) the ALJ was not required to weigh Dr. Charya's opinion because the restrictions in that opinion were not intended to be permanent (Def.'s Mem. Supp. Mot. J. Pldgs. at 8); (2) the ALJ gave good reasons for discounting Dr. Lewis' opinion, namely, that these opinions were remote in time and vague (*id.* at 9–13); and (3) the ALJ correctly evaluated the portion of Dr. Edwin's and Dr. Gartlan's opinions regarding Plaintiff's need for an assistive device (*id.* at 14–18). For the reasons explained below, the court agrees with Plaintiff that the ALJ incorrectly evaluated the medical opinion evidence of Dr. Charya and Dr. Lewis, and, therefore, orders remand to the Commissioner.

1. Dr. Charya

As noted above, the record indicates that Dr. Charya, a neurologist, provided opinions regarding Plaintiff's functional abilities in January 2015 and May 2015. ALJ Adams only noted the January 2015 opinion. In his brief, the Commissioner argues that Plaintiff "misinterprets Dr. Charya's evaluation findings" to the extent Plaintiff contends the functional restrictions stated were permanent rather than temporary and that "[t]he ALJ fully considered Dr. Charya's examination findings, as well as his

---

[5] Plaintiff's argument regarding Dr. Edwin and Dr. Gartlan, two consultative examiners, is that the ALJ erred in rejecting these physicians' opinions that Plaintiff required an ambulatory assistive device.

recommendation to receive further tests." (Def.'s Mem. Supp. Mot. J. Pldgs. at 8.) There are several problems with the Commissioner's position.

First, ALJ Adams did not explain that she was declining to assign any weight to Dr. Charya's January 2015 findings and opinions because those findings and opinions were temporary in nature and subject to further testing results. (*See* R. 1646.) Thus, the Commissioner's argument is prohibited post-hoc rationalization. *See Arakas*, 983 F.3d at 109 (first citing *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013); then citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962); and then citing *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) (reviewing court may only affirm an ALJ's decisions based on the reasons the ALJ provided); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("It may be, of course, as the Secretary suggests on appeal, that the ALJ considered all of these factors and proposed to himself cogent reasons for disregarding them. However, on this record we cannot so determine.").

Second, even assuming ALJ Adams had found that Dr. Charya's January 2015 opinions describe a temporary condition, the ALJ would have been required to reconcile those opinions with the May 2015 report from Dr. Charya (R. 2156), which appears to have been written after additional clinical testing and to have reached a similar conclusion regarding Plaintiff's lifting ability. *See* SSR 96–8p, 1996 WL 374184, at *7 (requiring reconciliation of material inconsistencies or ambiguities).

Third, ALJ Adams' opinion does not indicate whether she categorized Dr. Charya as a treating physician. While that determination cannot be made on review,

13

the treatment notes from Dr. Charya appear to indicate a treating relationship with a specialist physician (neurologist). If Dr. Charya was a treating physician, evaluation of his opinions would be subject to the treating physician rule.

For these reasons, it is not possible to conduct a meaningful review of ALJ Adams' evaluation of Dr. Charya's medical opinions. Remand is therefore necessary.

2. Dr. Lewis

ALJ Adams categorized Dr. Lewis as Plaintiff's treating podiatrist (R. 1653). Thus, evaluation of Dr. Lewis' opinions is subject to the treating physician rule. *See Dowling*, 986 F.3d at 384. Here, ALJ Adams' entire analysis[6] of Dr. Lewis' opinions is as follows:

> I have also considered the restrictions cited by the claimant's treating podiatrist, Dr. Lewis, at Ex. 1F, p. 449 and 10F. I give these little weight, as they are remote in time, with some dating prior to the alleged onset date, and they are vague as to how long they should be in place, i.e., ". . . need to be continued" (Ex. 1F, p. 449, and "indefinitely" p. 10F, p. 7).

(R. 1653.) This explanation does not comply with the required evaluation procedure described above.

Without determining whether the analysis sufficiently explains why Dr. Lewis' opinions were not given controlling weight, it is not apparent that ALJ Adams considered each factor identified in 20 C.F.R. § 404.1527(c)(2)(i)–(6) when deciding to assign little weight to Dr. Lewis' opinions. *See Dowling*, 986 F.3d at 385–86 (explaining that an ALJ's decision not to assign controlling weight to a treating

---

[6] ALJ Adams summarized some evidence from Dr. Lewis in a different section of the opinion. (R. 1647.)
14

physician's opinion was acceptable, but the ALJ's failure to consider each factor in the regulations when deciding how much weight to assign the opinion required remand). In particular, it is not apparent from ALJ Adams' explanation how she weighed the length of Dr. Lewis' relationship with Plaintiff and the frequency of Dr. Lewis' examinations of Plaintiff, the nature and extent of the relationship between Dr. Lewis and Plaintiff, the quality of Dr. Lewis' explanation of his opinions, the consistency of Dr. Lewis' opinion in the context of other evidence in the record, or Dr. Lewis' apparent specialization. *See* 20 C.F.R. § 404.1527(c)(2)(i)–(ii), (3)–(6). Furthermore, if Dr. Lewis' opinions were unclear to the ALJ, it was incumbent upon the ALJ to contact Dr. Lewis for clarification. *See* SSR 96–5p, 1996 WL 374183, at *2 ("For treating sources, the rules also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us.").

ALJ Adams did not evaluate the opinions of Dr. Lewis in accord with applicable regulations and Fourth Circuit precedent. Remand is therefore necessary.

## B. Remaining Arguments

Plaintiff's remaining arguments concern the evaluation for an ambulatory assistive device and the RFC. As Dr. Charya's and Dr. Lewis' opinions appear related to these determinations, the court declines to address Plaintiff's remaining arguments as the findings on remand may be substantially different. On remand, it will be incumbent on the Commissioner to consider all of the evidence before him and to explain his findings as to the weight afforded the evidence in accordance with the applicable regulations.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings [DE #19] is GRANTED, Defendant's Motion for Judgment on the Pleadings [DE #25] is DENIED, and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration.

This 9th day of March 2021.

_____
KIMBERLY A. SWANK
United States Magistrate Judge